IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUBA JAMIL COWAN,<br><br>                 Petitioner,<br><br>      vs.<br><br>SUZANNE M. PEERY, Acting Warden,<br>High Desert State Prison,[1]<br><br>            Respondent. | No. 2:12-cv-02025-JKS<br><br>MEMORANDUM DECISION |

Juba Jamil Cowan, a state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Cowan is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at High Desert State Prison. Respondent has answered, and Cowan has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On November 24, 2008, Cowan was charged with assault with a deadly weapon and making criminal threats. The information further alleged that Cowan had served two prior prison terms, suffered a prior strike offense within the meaning of the Three Strikes Law, CAL. PENAL CODE § 1170.12, and had been convicted of a prior serious felony. On direct appeal of his conviction, the California Court of Appeal recounted the following facts underlying the charges against Cowan:

> In November 2008, [Cowan] and his girlfriend, Stacie B., were engaged in a heated argument over finances at their house on Leland Avenue in Redding. At some point, [Cowan] decided to abandon the argument and started to get dressed to leave the

---

[1]    Suzanne M. Peery, Acting Warden, High Desert State Prison, is substituted for W.J. Sullivan, former Warden, California State Prison, Los Angeles County. FED. R. CIV. P. 25(c).

house.  While [Cowan] was getting dressed, Stacie picked up their infant daughter and left the house to take a walk around the neighborhood.  They reached the corner of Leland Avenue and Fell Street when it started to rain.  [Cowan], now dressed and in a green Ford Expedition, pulled up alongside Stacie, rolled down the window, and yelled at her to either take the baby back to the house or "get the 'F' in the vehicle right now." When Stacie declined and tried to continue on her walk, [Cowan] got out of the Expedition and the two yelled at each other on the sidewalk.

The commotion drew the attention of several neighbors, including Janice Pearson, who lived on Fell Street, one house away from the intersection where the argument was taking place.  Pearson grabbed her phone and walked to the end of her driveway to investigate.  She became worried when she saw that the woman involved in the argument was carrying a baby, and dialed 911.

While Pearson was on the phone with emergency services, [Cowan] returned to the Expedition and noticed Pearson on the phone.  [Cowan] then yelled to Pearson: "You nosy, F-ing bitch neighbor, I'll run your F-ing ass over."  [Cowan] got in the Expedition, which was facing away from Pearson's house, made a sweeping turn in the middle of the intersection, and drove the vehicle at a speed of 10 to 15 miles per hour directly at Pearson.  Pearson ran into her house.  As she ran, she looked behind her and saw [Cowan's] Expedition drive over the curb in front of her house, across a grassy median separating the curb from the sidewalk, and across the driveway where she had previously been standing.

Stopping in front of Pearson's house, [Cowan] yelled profanities at her, again called her "an F-ing nosy bitch," and told her that "if he wanted to run [her] over, he could drive his vehicle right through [her] house."  Still on the phone with emergency services, Pearson informed the operator that [Cowan] had just tried to run her over.  She then provided the Expedition's license plate number and reported that [Cowan] was also threatening her.  [Cowan] drove away, only to return a few minutes later to hurl further profanities in her direction.  Pearson told him her "only concern was the child," to which [Cowan] responded, "That's my F-ing child, you F-ing bitch."  [Cowan] again departed.

When police arrived in the neighborhood, they immediately came upon [Cowan's] Expedition and followed it to his house.  When [Cowan] got out of the vehicle, he said: "I know, I know, I've got to go to jail because I tried to run some lady over."

*People v. Cowan*, Nos. C061895, 2011 WL 683892, at *1-2 (Cal. Ct. App. Feb. 28, 2011).

Cowan proceeded to jury trial on March 10, 2009.  On March 18, 2009, the jury found Cowan guilty of assault with a deadly weapon but not guilty of making a criminal threat.  After Cowan waived his right to a jury trial as to the truth of his prior convictions, the trial court found the prior conviction allegations true.  The trial court subsequently imposed the upper term of 4

2

years' imprisonment, doubled to 8 years pursuant to the Three Strikes Law, on the assault with a deadly weapon conviction.  The court also imposed a concurrent term of 5 years' imprisonment for the current and prior serious felony convictions for an aggregate imprisonment term of 13 years.

Through counsel, Cowan appealed his conviction, arguing that: 1) the prosecution presented legally insufficient evidence that Cowan assaulted Pearson with a deadly weapon; and 2) the trial court erred by denying Cowan's motion to strike a prior conviction pursuant to *People v. Superior Court (Romero)*, 917 P.2d 628 (Cal. 1996).[2]  The Court of Appeal affirmed the conviction against Cowan in a reasoned, unpublished opinion issued on February 28, 2011. *Cowan*, 2011 WL 683892, at *5.  Counsel petitioned for review in the California Supreme Court, raising the same claims Cowan unsuccessfully raised in the Court of Appeal.  The California Supreme Court summarily denied the petition on May 11, 2011.

Proceeding through different counsel, Cowan filed a petition for a writ of habeas corpus in the Shasta County Superior Court.  In that petition, Cowan argued that: 1) his conviction was based in material part on false evidence by eyewitness Daniel Roberts; and 2) his trial counsel was ineffective for failing to properly investigate where Roberts was standing at the time of the incident to assess the accuracy of his testimony.  The superior court denied the petition in a reasoned, unpublished opinion issued on September 10, 2012.  Cowan then raised the same

---

[2]      Under California Penal Law § 1385, a California court may dismiss a defendant's "strike" conviction for purposes of sentencing under the state's Three Strikes law; a motion for such dismissal is referred to as a "*Romero*" motion based on the state supreme court's decision in that case.  *Romero*, 917 P.2d at 632.  A trial court's failure to dismiss or strike a prior conviction is reviewed for abuse of discretion.  *People v. Carmony*, 92 P.3d 369, 374 (Cal. 2004).  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  *Id*. at 377.

claims in a counseled habeas petition in the California Court of Appeal, which was denied without comment on October 4, 2012.  Cowan sought review in the California Supreme Court, which was summarily denied on November 12, 2012.

Again proceeding through counsel, Cowan filed a timely *pro se* Petition for a Writ of Habeas Corpus to this Court on August 1, 2012.

## II. GROUNDS/CLAIMS

In his counseled Petition, Cowan raises three grounds for relief.  First, Cowan argues that there was insufficient evidence that he assaulted Pearson with a deadly weapon.  He next claims that his conviction must be reversed because it is based in material part on false evidence. Finally, Cowan contends that his trial counsel's failure to investigate constituted ineffective assistance of counsel.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear

and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

Claim 1.        *Insufficiency of the Evidence*

Cowan first argues that there was insufficient evidence to support his assault with a deadly weapon conviction because, "[w]hile [Cowan] may have wanted to scare Pearson, there was no evidence that he intent [sic] to hit her with his car."

As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This Court must therefore determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  Consequently, although the sufficiency of the evidence review by this Court is grounded in the

6

Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted)

Under California law, assault is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." CAL. PENAL CODE § 240. "[A]ssault does not require a specific intent to injure the victim." *People v. Williams*, 29 P.3d 197, 203 (Cal. 2001). Instead, it "is a general intent crime, established upon proof the defendant wilfully committed an act that by its nature will probably and directly result in injury to another." *People v. Chance*, 189 P.3d 971, 974 (Cal. 2008) (quotation marks omitted). At the time of Cowan's 2009 conviction, California Penal Code § 245(a)(1) punished assaults committed "with a deadly weapon or instrument other than a firearm" or by "any force likely to produce great bodily injury." CAL. PENAL CODE § 245(a)(1). Whether the victim is injured is irrelevant "because the statute focuses on the *use* of a deadly weapon or instrument or, alternatively, on force *likely* to produce great bodily injury." *People v. Aguilar*, 945 P.2d 1204, 1212 n.9 (Cal. 1997). "[A] deadly weapon is any object, instrument, or weapon which is used in

such a manner as to be capable of producing and likely to produce, death or great bodily injury."
*Id.* at 1207 (citation and internal quotation marks omitted).

      Cowan argues that the evidence was insufficient to support his conviction because he did
not commit an act that was likely to produce great bodily injury.  He recounts the following
facts:

> Petitioner never got close to Pearson.  Pearson estimated that she was 15 feet from
> her front door whether Petition[er] drove towards her at 10 to 15 miles per hour after
> making a wide turn and coming in her direction.  Pearson herself testified that she did not
> give Petitioner the opportunity to come close to her.  Petitioner never sped up in order to
> close the distance to her.  Although the tire marks indicated that Petitioner's car ended up
> where Pearson had initially been standing, by the time Petitioner reached that point,
> Pearson was already in her house.

      Cowan argues that these circumstances establish that Cowan did not intend to cause a
collision, and there was no assault with a deadly weapon since a collision was easily avoidable.

      Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if
accepted as credible by the trier of fact, sufficient to sustain conviction.  *Schlup*, 513 U.S. at 330.
The United States Supreme Court has recently even further limited a federal court's scope of
review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the
ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."
*Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam).  *Jackson* "makes clear that it is the
responsibility of the jury—not the court—to decide what conclusions should be drawn from
evidence admitted at trial."  *Id.* at 3-4.  Under *Cavazos*, "a federal court may not overturn a state
court decision rejecting a sufficiency of the evidence challenge simply because the federal court
disagrees with the state court.  The federal court instead may do so only if the state court

decision was 'objectively unreasonable.'" *Id.* at 4 (*quoting Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Pearson testified that Cowan announced his intent to hit her with his car immediately before he chased her into her house.  From this testimony, a reasonable trier of fact could readily conclude that Cowan intentionally drove his car in a manner that would probably cause injury to Pearson.  As the Court of Appeal stated in rejecting Cowan's claim:

> Here, after announcing that he was going to run Pearson over, [Cowan] drove his Expedition directly at her as she ran into her house.  Then, when he was contacted by police, he admitted that he "tried to run some lady over."  Driving a vehicle directly at another person, even at the relatively low speed of 10 to 15 miles per hour, is certainly an intentional act that by its nature will probably and directly result in the application of physical force against another.  And there can be no doubt that striking a person with an Expedition would likely exert enough force upon the person to produce great bodily injury. . . .  The fact that she outran the Expedition does not make this any less of an assault with a deadly weapon.

*Cowan*, 2011 WL 683892, at *2-3.

Although it might have been possible to draw a different inference from the totality of the evidence, this Court is required to resolve that conflict in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  For the reasons enumerated by the Court of Appeal and viewing the evidence in the light most favorable to the verdict, the record does not compel the conclusion that no rational trier of fact could have found proof that Cowan intentionally drove his car in a manner that would probably cause injury to Pearson.  Thus, considering the deference owed under *Jackson*, *Cavazos*, and the AEDPA, this Court should conclude that there was sufficient evidence introduced at trial from which a rational trier of fact could have found beyond a reasonable doubt that Cowan was guilty of assault with a deadly weapon.  Accordingly, Pearson is not entitled to relief on his insufficiency of the evidence claim.

Claim 2.         *False Evidence*

Cowan next argues that he was convicted in material part based on the false testimony of eyewitness Daniel Roberts.  Cowan alleges that "new evidence demonstrates that it would have been impossible for Roberts to have seen Pearson standing in her driveway or running towards her house[] from his porch."  Cowan's claim is based on California Penal Code § 1473(b)(1), which provides that "[a] writ of habeas corpus may be prosecuted for . . . [f]alse evidence that is substantially material or probative on the issue of guilt or punishment [that] was introduced against a person at a hearing or trial relating to his or her incarceration."  CAL. PENAL CODE § 1473(b)(1).

Respondent urges this Court to dismiss Cowan's claim as unexhausted.  This Court may not consider claims that have not been fairly presented to the state courts.  28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995).  A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66.

In his Traverse, Cowan concedes that his claim differs from a federal false evidence claim.  While the United States Supreme Court has held that the presentation of false evidence may be a violation of federal due process, a federal false evidence claim requires, in addition to the requirements under California law that the evidence be false and material, that "the prosecution knew or should have known that the testimony was actually false."  *Sivak v.*

*Hardison*, 658 F.3d 989, 908-09 (9th Cir. 2011) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)); *see also United States v. Agurs*, 427 U.S. 97, 103 (1976) (stating that "the Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair").  Cowan does not contend, nor did he contend on direct appeal, that the prosecution either knew or should have known that Roberts' testimony was false.

Cowan nonetheless argues that he fully exhausted his claim by alleging that, "[u]nder the Federal Constitution, even if the government unwittingly presents false evidence, it violates due process and a defendant is entitled to a new trial if he can show prejudice."  In support of his contention, Cowan cites the Ninth Circuit's decision in *United States v. Young*, 17 F.3d 1201 (9th Cir. 1994).  The Ninth Circuit has indeed allowed habeas relief based on false testimony regardless of the knowledge of its falsity.  *See Maxwell v. Roe*, 628 F.3d 486, 499-500 (9th Cir. 2010); *Killian v. Poole*, 282 F.3d 1204, 1209 (9th Cir. 2002).  The Ninth Circuit has held upon direct appeal of a federal conviction:

> [A] government's assurances that false evidence was presented in good faith are little comfort to a criminal defendant wrongly convicted on the basis of such evidence.  A conviction based in part on false evidence presented in good faith, hardly comports with fundamental fairness.  Thus, even if the government unwittingly presents false evidence, a defendant is entitled to a new trial "if there is a reasonable probability that [without the evidence] the result of the proceeding would have been different.

*Young*, 17 F.3d at 1203-04.

Assuming, without deciding, that this Ninth Circuit case law supports a finding that Cowan raised a federal claim before the state courts, Cowan is nonetheless not entitled to relief on it.  "AEDPA permits habeas relief only if a state court's decision is 'contrary to, or involved an unreasonable application of, clearly established Federal law' as determined by [the Supreme] Court, not by the courts of appeals."  *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014).  Because the

Supreme Court requires the knowing presentation of false evidence, Cowan's claim does not

contravene or unreasonably apply Supreme Court precedent.  Moreover, as discussed in

connection with his related ineffective assistance of counsel claim, Cowan's false evidence claim

is without merit.  Accordingly, Cowan cannot prevail on this claim in any event.

Claim 3.    *Ineffective Assistance of Trial Counsel*

Finally, Cowan faults trial court for failing to undertake an investigation into where

Roberts was standing at the time of the incident and whether he could have seen the events as he

described them.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a

defendant must show both that his counsel's performance was deficient and that the deficient

performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one

in which "counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment."  *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the

outcome might have been different as a result of a legal error, the defendant has established

prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v.

United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Where a habeas

petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice

standard is applied and federal courts do not engage in a separate analysis applying the

harmlessness standard of *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  *Avila v. Galaza*,

297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th

12

Cir. 2009).  Under this rubric, in reviewing ineffective assistance of counsel claims in a federal

habeas proceeding:

> The question "is not whether a federal court believes the state court's
> determination" under the *Strickland* standard "was incorrect but whether that
> determination was unreasonable—a substantially higher threshold."  And, because the
> *Strickland* standard is a general standard, a state court has even more latitude to
> reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v.*

*Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Cowan must show that defense counsel's representation was not within the range

of competence demanded of attorneys in criminal cases, and there is a reasonable probability

that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,*

474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the

petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See*

*Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not

address both prongs if the defendant fails on one).

In support of his claim, Cowan alleges:

> In the instant case, counsel failed to properly investigate where Roberts was
> standing at the time of the incident and whether he could have seen the events as he
> described them or whether he was merely repeating the events as he had heard them from
> Pearson.  While trial counsel sent defense investigator Hicks to interview Roberts and
> while Roberts told Hicks that he was standing on his porch viewing the incident, Hicks,
> who interviewed Roberts on his driveway, failed to note in his report that it would have
> been impossible for Roberts to have seen Pearson's driveway from his porch.  As pictures
> presented at trial demonstrated that Robert's [sic] house was behind Pearson's house and
> there were bushes between his porch and Pearson's driveway, counsel should have
> clarified where exactly Roberts was standing and whether it was possible to have seen
> Pearson standing near the tree, running to her house, or Petitioner going over the curb.

But as the superior court found in rejecting Cowan's state habeas petition, Cowan failed to establish that Roberts' testimony was false and thus does not show that further investigation by trial counsel would have uncovered its falsity. Cowan therefore fails to demonstrate that trial counsel's performance was deficient. The superior court additionally determined that "[Cowan] has not demonstrated that he would have experienced a more favorable outcome absent counsel's alleged ineffective assistance because the evidence of [his] guilt was overwhelming." This Court cannot say that the decision of the state court, which is fully supported by the record, contravened or unreasonably applied federal law. Accordingly, Cowan is not entitled to relief on his ineffective assistance of counsel claim.

## V. CONCLUSION AND ORDER

Cowan is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* Fed. R. App. P. 22(b); 9th Cir. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 26, 2015.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge

15